Kubera v Bartholomew (2018 NY Slip Op 08784)





Kubera v Bartholomew


2018 NY Slip Op 08784


Decided on December 21, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 21, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, AND WINSLOW, JJ.


1025 CA 17-01748

[*1]DANIEL J. KUBERA, PLAINTIFF-APPELLANT,
v
ANTHONY O. BARTHOLOMEW, M.D., BETH WLODAREK, RPA-C, G. JAY BISHOP, M.D., ANDREW J. LANDIS, M.D., MEDICOR ASSOCIATES, INC., MEDICOR ASSOCIATES OF CHAUTAUQUA, BROOKS MEMORIAL HOSPITAL AND THOMAS BURNS, M.D., DEFENDANTS-RESPONDENTS. 






THE JOY E. MISERENDINO LAW FIRM P.C., ORCHARD PARK, MAGAVERN MAGAVERN GRIMM LLP, BUFFALO (EDWARD J. MARKARIAN OF COUNSEL), FOR PLAINTIFF-APPELLANT.
RICOTTA & VISCO, BUFFALO (KATHERINE V. MARKEL OF COUNSEL), FOR DEFENDANTS-RESPONDENTS ANTHONY O. BARTHOLOMEW, M.D., G. JAY BISHOP, M.D., ANDREW J. LANDIS, M.D. AND BROOKS MEMORIAL HOSPITAL.
NOTARO & LAING, P.C., BUFFALO (LINDA C. LAING OF COUNSEL), FOR DEFENDANT-RESPONDENT BETH WLODAREK, RPA-C. 
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, ERIE, PENNSYLVANIA (THOMAS M. LENT OF COUNSEL), FOR DEFENDANTS-RESPONDENTS MEDICOR ASSOCIATES, INC. AND MEDICOR ASSOCIATES OF CHAUTAUQUA.
FELDMAN KIEFFER, LLP, BUFFALO (LAUREN A. HEIMER OF COUNSEL), FOR DEFENDANT-RESPONDENT THOMAS BURNS, M.D. 


 Appeal from a judgment and order (one paper) of the Supreme Court, Chautauqua County (Frank A. Sedita, III, J.), entered July 5, 2017. The judgment and order granted defendants' motions and cross motions for summary judgment. 
It is hereby ORDERED that the judgment and order so appealed from is unanimously modified on the law by denying in part the motion of defendants Anthony O. Bartholomew, M.D., G. Jay Bishop, M.D., Andrew J. Landis, M.D. and Brooks Memorial Hospital, and denying the cross motions of defendants Beth Wlodarek, RPA-C, Medicor Associates, Inc., and Medicor Associates of Chautauqua, and the motion of defendant Thomas Burns, M.D., and reinstating the amended complaint against defendants Beth Wlodarek, RPA-C, G. Jay Bishop, M.D., Andrew J. Landis, M.D., Medicor Associates, Inc., Medicor Associates of Chautauqua, Brooks Memorial Hospital and Thomas Burns, M.D., and as modified the judgment and order is affirmed without costs.
Memorandum: In this medical malpractice action, plaintiff appeals from a judgment and order that granted defendants' respective motions and cross motions for summary judgment dismissing the amended complaint against them (Kubera v Bartholomew, 56 Misc 3d 1203[A], 2017 NY Slip Op 50845[U] [Sup Ct, Chautauqua County 2017]). We conclude that, with the exception of that part of the motion of defendants Anthony O. Bartholomew, M.D., G. Jay Bishop, M.D., Andrew J. Landis, M.D. and Brooks Memorial Hospital (BMH) seeking dismissal of the amended complaint against Dr. Bartholomew, Supreme Court erred in granting the respective motions and cross motions, and we therefore modify the judgment and order [*2]accordingly and reinstate plaintiff's amended complaint against the remaining defendants.
Throughout an 11-day period in March 2008, plaintiff presented to defendant Beth Wlodarek, RPA-C, several times with various complaints. She diagnosed him as suffering from, inter alia, sinusitis and an ear infection and prescribed antibiotics. Wlodarek is a physician assistant employed by defendants Medicor Associates, Inc., and Medicor Associates of Chautauqua (collectively, Medicor). Dr. Bartholomew, Dr. Bishop, and Dr. Landis are physicians employed by Medicor. Also during that time period, plaintiff presented to the emergency room at BMH, where he was treated by BMH staff and defendant Thomas Burns, M.D.
Plaintiff commenced this action seeking damages for injuries that he allegedly sustained as a result of the individual defendants' negligence in failing to diagnose and treat a stroke that plaintiff suffered while he was under their care, and he alleged that Medicor and BMH are vicariously liable for that negligence.
Dr. Bartholomew was plaintiff's personal primary care physician. He was on vacation during the operative 11-day period and, upon his return, he immediately recognized the signs and symptoms of a stroke and treated plaintiff accordingly. Plaintiff's only allegation against Dr. Bartholomew was that he went on vacation without providing plaintiff with adequate medical care in his absence. At oral argument of this appeal, plaintiff's attorney conceded that there were no viable claims against Dr. Bartholomew, and we agree. We thus conclude that the court properly dismissed the amended complaint against him.
With respect to the remaining defendants, we conclude that they failed to meet their initial burden on their respective motions and cross motions for summary judgment and, as a result, the burden never shifted to plaintiff to raise triable issues of fact (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
"It is well settled that, on a motion for summary judgment, a defendant in a medical malpractice action bears the initial burden of establishing either that there was no deviation or departure from the applicable standard of care or that any alleged departure did not proximately cause the plaintiff's injuries" (Bagley v Rochester Gen. Hosp., 124 AD3d 1272, 1273 [4th Dept 2015]; see Occhino v Fan, 151 AD3d 1870, 1871 [4th Dept 2017]). Here, the remaining defendants established neither. Wlodarek, Dr. Landis, Dr. Bishop and Dr. Burns failed to establish as a matter of law that they did not deviate from the appropriate standard of care or that their purported malpractice did not cause any of plaintiff's physical injuries. As a result, Medicor and BMH failed to establish as a matter of law that they were not vicariously liable to plaintiff.
In support of their motions and cross motions, defendants submitted plaintiff's records from Medicor and BMH. In her notes from plaintiff's appointments on March 14, 19 and 21, 2008, Wlodarek stated that plaintiff presented with complaints of, inter alia, ear pain, sinus pain and headaches. She diagnosed him with sinusitis and an ear infection and prescribed antibiotics. That diagnosis persisted despite plaintiff's multiple visits, a worsening of his condition and his visit to the emergency room of BMH on the night of March 19 into March 20. There is no mention in any of Wlodarek's notes or the BMH records of any signs or symptoms indicative of a stroke.
Nevertheless, defendants also submitted the deposition testimony of plaintiff, two of his family members who accompanied him to either the March 19 and 21 appointments or the emergency room visit, and the partner of one of those family members. Plaintiff and his family members testified that plaintiff repeatedly complained to Wlodarek, BMH staff and Dr. Burns that he had suffered a stroke and that his head was "killing [him]." Moreover, all four individuals testified that plaintiff was exhibiting the physical manifestations of having suffered a stroke, i.e., facial droop, listing to one side, problems walking, slurring of words and difficulty finding words, when he presented to Wlodarek on March 19 and 21 and when he presented to the emergency room at BMH on March 19.
Dr. Landis was Wlodarek's supervising physician and cosigned her notes from the March 19 and March 21 appointments. Dr. Bishop handled two triage messages regarding plaintiff's [*3]treatment on March 20 and 21, and he stated that he would "discuss [the] case with [Wlodarek]." Plaintiff and one relative testified that, during the March 21 appointment, Wlodarek exited the room for a period of time to discuss the case with Dr. Bishop, who thereafter declined to see plaintiff.
There is no dispute that, on March 25, Dr. Bartholomew accurately diagnosed plaintiff as having suffered a stroke. Medical records from plaintiff's subsequent treatment, which were also submitted by defendants in support of their motions and cross motions, establish that, as of March 25, there was "no evidence of an evolving infarction . . . Changes within the left cerebral white matter were nonspecific and felt to be representative of old infarctions" (emphasis added). Following surgery, during which plaintiff suffered a "subarachnoid hemorrhage," i.e., a known risk of the procedure, plaintiff had significant medical problems, including expressive aphasia, persistent facial droop and an inability to move his right side.
Although defendants submitted affidavits from medical experts opining that the individual defendants did not deviate from the standard of care and that any alleged deviation was not a proximate cause of the postsurgery medical complications, those experts relied solely on the symptoms as documented in the medical records of Medicor and BMH. As noted above, those symptoms are vastly different from the symptoms allegedly reported to the remaining defendants and demonstrated by plaintiff before the surgery. It is well settled that experts may not rely upon disputed facts when rendering an opinion (see Reading v Fabiano, 137 AD3d 1686, 1687 [4th Dept 2016]; Reiss v Sayegh, 123 AD3d 787, 789 [2d Dept 2014]; see also Metcalf v O'Halleran, 137 AD3d 758, 759 [2d Dept 2016]). Moreover, we note that defendants' experts failed to address plaintiff's contention that, had he been timely diagnosed, he would not have been required to undergo the surgery in the first place. Contrary to the contention of several defendants, that theory of causation was raised in the amended complaint, as amplified by the bills of particulars. "By ignoring the [allegation that the remaining defendants' malpractice caused plaintiff to undergo the very surgery that caused the brain bleed], defendant[s'] expert[s] failed to tender[ ] sufficient evidence to demonstrate the absence of any material issues of fact' . . . as to proximate causation and, as a result, [the remaining] defendant[s] [were] not entitled to summary judgment" with respect to those parts of their respective motions and cross motions (Pullman v Silverman, 28 NY3d 1060, 1063 [2016]).
With respect to specific contentions of the individual remaining defendants, we reject Dr. Bishop's contention that he cannot be found liable because he was not involved in any treatment of plaintiff. The evidence established that he was involved, to some degree, in plaintiff's treatment and the expert affidavit submitted in support of Dr. Bishop's motion failed to address that evidence. We thus conclude that Dr. Bishop failed to establish that he did not deviate from the standard of care or that his alleged deviations did not proximately cause any injury to plaintiff (see e.g. James v Wormuth, 74 AD3d 1895, 1895 [4th Dept 2010]; S'Doia v Dhabhar, 261 AD2d 968, 968 [4th Dept 1999]).
Finally, with respect to Dr. Landis, we conclude that he failed to carry his burden of demonstrating as a matter of law that he appropriately supervised Wlodarek (see Education Law § 6542 [1]) and was otherwise not "medically responsible" for her alleged malpractice (10 NYCRR 94.2 [f]).
Based on our determination, we do not address plaintiff's remaining contention.
Entered: December 21, 2018
Mark W. Bennett
Clerk of the Court